STATE of Missouri, Respondent,

v.

Billy Lynn BLOCKER, Appellant.

No. SC 85704.

Supreme Court of Missouri,
En Banc.

May 11, 2004.

John M. Albright, Stephen E. Walsh, Poplar Bluff, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

Billy Lynn Blocker appeals his conviction and sentence after a jury trial for possession of a controlled substance, section in violation of 195.202, RSMo Supp. 1998[1]. The circuit court of Iron County sentenced Blocker to ten years imprisonment as a prior and persistent offender under section 558.016. Because the trial court erred in denying Blocker's motion for a continuance so he could present the testimony supporting his defense that he was in lawful possession of the substance, the judgment is reversed and the case is remanded for a new trial.

*FACTS*

On August 25, 1999, Mr. Blocker and his brother, Cary Ray, were traveling in their grandfather's car from Poplar Bluff, Missouri, to Hillsboro, Missouri. Blocker lived with his grandparents in Poplar Bluff. While Ray was driving, the car was stopped by the Missouri Highway Patrol. Blocker removed a pill from Ray's cigarette package. Blocker's grandmother had given Ray the pill to "calm his nerves down." Ray was arrested on an outstanding warrant.

Following Ray's arrest, Blocker was asked to empty his pockets. The officer found the pill in Blocker's pant pocket. Subsequent testing showed the pill to be diazepam,[2] a schedule IV controlled substance listed in section 195.017.8.[3]

At trial, Blocker tried to argue that he was in lawful possession of the pill as an "ultimate user." Blocker argued that because he was living with his grandmother, who had a valid prescription for diazepam, he lawfully possessed "a controlled substance ... for the use of a member of his household" and was, therefore, an "ultimate user" under section 195.010(40).

To support this defense, Blocker subpoenaed pharmacist Brenda Lunsford to testify that she filled a diazepam prescription for Blocker's grandmother near the time of Blocker's arrest. However, the pharmacist was temporarily unavailable to testify because of a family medical emergency on the Friday before the Monday trial. Blocker learned the pharmacist would be unavailable on Sunday, the day before trial, and obtained an affidavit from her. In

---

1. All statutory references are to RSMo Supp. 1998.

2. Diazepam is prescribed to treat anxiety, skeletal muscle spasms, and alcohol withdrawal symptoms. It is commonly known as Valium. PHYSICIANS' DESK REFERENCE 2988, 2988 (58 ed.2004).

3. Substances classified in schedule IV has less potential for abuse and limited physical or psychological dependence compared to substances in schedules I, II, and III. *See* sections 195.017.7; 195.017.5.

the affidavit, the pharmacist stated the reasons for her temporary unavailability to testify and attached the prescription records she would have identified at trial. She further stated that she had recently filled a diazepam prescription for Blocker's grandmother.

The trial court overruled Blocker's motion for a continuance. The court determined that the pharmacist's testimony would not support Blocker's defense because the diazepam was not in the original container, but in Blocker's pocket, and was prescribed for his grandmother. Alternatively, Blocker sought to admit the pharmacist's affidavit and business records into evidence. The court accepted the offer of proof but did not furnish the affidavit or records to the jury.

After a jury trial, Blocker was sentenced to ten years imprisonment. Blocker argues that the circuit court erred in denying his motion for continuance so that he could present the pharmacist's testimony in support of his "ultimate user" defense.

## ANALYSIS

### I. Standard of Review

The decision to grant a continuance is within the sound discretion of the trial court. *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003). A defendant must demonstrate that the denial of a continuance was prejudicial. *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). If a continuance is not likely to result in the presence of the witness at trial, the court will not be held to have abused its discretion in denying the continuance. *Edwards*, at 535, (quoting *State v. Dodd*, 10 S.W.3d 546, 554 (Mo.App.1999)).

### II. Lawful Possession

The primary rule of statutory construction is to give effect to legislative intent as reflected in the plain language of the statute. *State v. Grubb*, 120 S.W.3d

737, 739 (Mo. banc 2003). Each word or phrase in a statute must be given meaning if possible. Related statutes are also relevant to further clarify the meaning of a statute. *State v. Withrow*, 8 S.W.3d 75, 80 (Mo. banc 1999). If the plain language of statute creates an ambiguity, the statute will be construed to avoid unreasonable or absurd results. *In re Beyersdorfer*, 59 S.W.3d 523, 526 (Mo. banc 2001).

Section 195.180.1 provides, in relevant part, that:

> A person may lawfully possess or have under his control a controlled substance if such person obtained the controlled substance *directly from, or pursuant to, a valid prescription* or order of a practitioner while acting in the course of a practitioner's professional practice or except as otherwise authorized by section 195.005 to 195.425. (Emphasis added).

The statute provides that a person can lawfully possess or control a controlled substance if it is obtained "directly from" or "pursuant to" a valid prescription. The use of different phrases implies that each has a different meaning. Although neither phrase is statutorily defined, the plain meaning of the phrase "directly from" a valid prescription refers to possession of a controlled substance by the prescription holder. What constitutes lawful possession "pursuant to" a valid prescription is not clear. Related statutes indicate that lawful possession "pursuant to" a valid prescription can, in some circumstances, include the other members of the prescription holder's household.

Section 195.010(11) allows drugs to be dispensed to an "ultimate user" pursuant to a prescription. Section 195.010(40) defines an ultimate user as:

> [A] person who lawfully possesses a controlled substance or an imitation controlled substance *for his own use or for the use of a member of his household* or

for administering to an animal owned by him or a member of his household. (Emphasis added).

■ The definition of "ultimate user" indicates that the General Assembly intended to allow a household member to possess or control the prescriptions of another household member. However, the scope of lawful possession is limited by the prescription. Once a person has lawful possession, it remains lawful only so long as the prescribed substance is for "his own use" or "for the use of member of his household." Section 195.010(40). For instance, a son could lawfully retrieve a prescription drug for his bedridden father. Lawful possession would cease if the son used the drug himself or transferred it for use by another person.

■ If household members could not lawfully possess or control substances prescribed to others in the household, the results would be absurd. For instance, if spouses share and have joint control over a medicine cabinet, the spouse without the prescription could be charged with illegally possessing a controlled substance prescribed to the other. That would be the case if one spouse stored an illegal narcotic, such as methamphetamine, in a shared cabinet. *See, State v. Hall,* 687 S.W.2d 924 (Mo.App.1985) (court affirmed wife's conviction for possession of marijuana found in a home she shared with her husband because the drugs were found on a dresser in defendant's bedroom). However, by including household members among those who may lawfully possess or control substances prescribed to another household member, the General Assembly exempted household members from prosecution for prescription drugs because each household member's possession or control arises "pursuant to" a prescription.

III. *Continuance*

■ Blocker's motion for continuance and affidavit established that his grandmother, a household member, had a prescription for the diazepam he was charged with possessing. Blocker was entitled to a continuance until he could secure the pharmacist's testimony. She was the only witness who could supply the testimony necessary for Blocker to establish his defense. Whether Blocker was holding the pill for the use of a household member with a prescription is a jury question. Under the circumstances of this case, it is quite possible that the jury could have found that the state failed to prove its case if Blocker had been able to present his defense with the pharmacist's testimony. The trial court abused its discretion in denying Blocker the opportunity to introduce evidence in support of his defense against serious felony charges.

The judgment denying Blocker's motion for a continuance is reversed, and the case is remanded.

WHITE, C.J., WOLFF and STITH, JJ., concur.

LIMBAUGH, J., dissents in separate opinion.

BENTON and PRICE, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., J., dissenting.

I respectfully dissent.

Although I agree that in some situations the statutory scheme allows one member of the household to possess a controlled substance prescribed to another member of the household, the statutes are in fact far more restrictive than the majority perceives, and in this case, they clearly preclude the viability of a "household defense." Thus, if the defense was

not available, there was no need to call the pharmacist as a witness and no error in denying a continuance to secure the presence of that witness.

The first statute on which defendant relies—sec. 195.180.1—provides that "[a] person may lawfully possess ... a controlled substance if such person obtained the controlled substance *directly from,* or *pursuant to,* a valid prescription ..." (emphasis added). Here, the defendant possessed the controlled substance neither "directly from" nor "pursuant to" a valid prescription. According to defendant's own account of the matter, the controlled substance was not prescribed for him, but for his grandmother, and he possessed it not on behalf of his grandmother, but to take it from his brother, Ray. In fact, defendant testified that when he realized Ray was being arrested, he removed the pill from Ray's cigarette package and placed it in his own pocket because he knew his brother had prior drug offenses, and he wanted to keep him out of trouble.

This same account also negates the possibility that the defendant is an "ultimate user," as defined under section 195.010(40), whose conduct might be excused under section 195.030.4(3), which permits "ultimate users" to possess controlled substances. To restate section 195.010(40), an "ultimate user" is "[A] person who lawfully possesses a controlled substance ... for his own use or for the use of a member of his household...." There is no theory by which this defendant possessed the controlled substance for his own use, as in that instance even the majority would concede that defendant would not lawfully possess the controlled substance. Nor can it be said that defendant possessed the controlled substance for the use of a member of his household. Again, he took it from his brother's cigarette pack so that his brother would not be caught with it, and certainly he did not possess it for the

use of his grandmother because the grandmother gave it (albeit illegally) to defendant's brother in the first place. Besides, defendant makes no claim that he possessed it for the use of his grandmother, his brother, or any other member of the household. Instead, defendant's claim is simply this: "The only limitation on the prescription defense is that the defendant or a member of his or her household must have a prescription [for the controlled substance]," as if the use for which defendant possesses the controlled substance is irrelevant. This, too, appears to be the position of the majority.

As I read the statute, however, the mere fact that the controlled substance in question had been prescribed to a member of the household is not enough, by itself, to excuse possession by another member of the household. Under the statute, the defense must be that the defendant possessed the controlled substance "for the use of a member of [the] household." Unfortunately, the majority makes no effort to apply this part of the statute to the facts of the case at hand, and instead justifies its decision by the fear that application of the statute would lead to harsh results. That fear, however, is based on factual contexts not present here—whether "a son could lawfully retrieve a prescription drug for his bedridden father," or whether spouses could share and have joint control over a medicine cabinet without concern that one spouse "could be charged with illegally possessing a controlled substance prescribed to the other." In both instances, of course, the possession of the controlled substance was clearly "for the use of a member of the household." In this case, however, that element is missing, and there is no need for a jury determination because the defendant, in effect, conceded the issue.

For these reasons, I would affirm the conviction.