**STATE of Missouri, Plaintiff–Respondent,**

v.

**Elgin Lee CASTRO, Defendant–Appellant.**

**No. SD 29000.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 2009.

Nancy A. McKerrow, Columbia, MO, for Appellant.

James B. Farnsworth, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Elgin Castro ("Defendant") appeals his judgment of conviction and resulting fifteen year sentence in the Department of Corrections entered after a jury found him guilty of the class B felony of child molestation in the first degree pursuant to section 566.067.[1] In his sole point on appeal, Defendant claims the trial court abused its discretion when it denied Defendant's second motion for a continuance of his trial date. Defendant claimed he needed the additional time to investigate the possibility that Clarence Pease, Defendant's stepfather ("Stepfather"), was the person who had actually committed the offense charged to Defendant. Because Defendant had known for two years about Stepfather's identity and presence at the scene at the time of the offense, and because the more recently acquired information Defendant says demonstrates that Stepfather had a propensity to commit this particular type of crime would not have been admissible at Defendant's trial, we affirm the judgment.

## I. Facts and Procedural Background

Defendant does not contest the sufficiency of the evidence to support his conviction. We consider the facts and all reasonable inferences derived therefrom in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Lloyd*, 205 S.W.3d 893, 898 (Mo. App. S.D.2006). We have applied this standard in summarizing the following facts.

K.C., a ten-year-old girl ("Victim"), was spending the night at the home of family friends. Those present in the home that night were Victim, Victim's brother, Stepfather, Defendant, and Defendant's mother. Victim was sleeping on the living room couch and awoke when she felt someone touching her chest, back, and "potty spot." Upon awakening, Victim said "stop," turned around, and saw Defendant. Victim then ran into the kitchen and telephoned her mother who came to the home and picked her up. Victim told her mother what had happened, and her mother called the police.

Approximately three years later—about three months prior to Defendant's trial—Stepfather was charged with molesting a child. Approximately one week before Defendant's trial was to commence, Defendant filed a motion to dismiss or, in the alternative, to compel the production of certain discovery and continue his trial setting. The basis for the motion was a contention that the allegations against Stepfather were similar enough to the charges against Defendant to indicate a common scheme or plan by Stepfather and could mean that Stepfather had actually been the person who had molested Victim. The trial court denied the motion to dismiss, sustained the motion to compel (or-

1. Although Defendant was charged as a prior offender and the trial court found beyond a reasonable doubt that Defendant was a prior offender within the meaning of section 558.016, the trial court's judgment does not indicate that Defendant was actually sentenced as a prior offender and the sentence he received is within the range allowed for a first-time offender convicted of a class B felony. *See* section 558.011. Unless otherwise noted, all references to statutes are to RSMo 2000.

dering the State to furnish materials involving the allegations against Stepfather), and sustained the motion for continuance, setting the trial off an additional two weeks.

Three days prior to the reset trial date, Defendant filed a second motion for continuance, asserting the area's recent ice storm and the State's alleged failure to produce all materials related to the allegations against Stepfather made it difficult or impossible to complete his necessary investigation of Stepfather. This second motion for continuance was denied, and the trial was held as scheduled.

## II. Standard of Review

The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Edwards,* 116 S.W.3d 511, 535 (Mo. banc 2003). "A very strong showing is required to prove a trial court abused its discretion in denying a request for continuance." *State v. Lucas,* 218 S.W.3d 626, 630 (Mo.App. S.D.2007) (citing *State v. Wendleton,* 936 S.W.2d 120, 123 (Mo.App. S.D.1996)). "Before refusal to grant a continuance will be construed an abuse of discretion, defendant must demonstrate the denial is prejudicial." *State v. Lopez,* 836 S.W.2d 28, 32 (Mo.App. E.D. 1992).

## III. Discussion

Defendant claims the trial court abused its discretion in denying his second motion for continuance because the trial court knew: 1) That an ice storm had taken out the telephone lines, making it difficult or impossible for Defendant to call or depose potential witnesses; 2) The State had failed to provide him with all of the material concerning the allegations against Stepfather, specifically the Child Advocacy Center interview with the victim; 3) That the allegation against Stepfather was nearly identical to what Victim would testify happened to her; 4) That Stepfather was 79 years old and seemed to be suffering from some form of dementia; and 5) Not only was Stepfather in the trailer on the night Victim alleged she was molested, but he was in the living room immediately after Victim cried out. For these reasons, Defendant contends he was "denied the opportunity to support his theory of defense that he was in his room asleep when [Victim] was molested because he ran out of time before trial to investigate whether [Stepfather] may have molested [Victim]."

As support for this contention, Defendant relies on *State v. Blocker,* 133 S.W.3d 502 (Mo. banc 2004). Defendant's reliance on *Blocker* is misplaced. In *Blocker,* the defendant discovered on the day before trial that the sole witness who could supply crucial defense testimony had become unavailable due to an emergency. The *Blocker* court ruled that the trial court had abused its discretion by denying defendant's request for a continuance under these circumstances because it effectively denied the defendant an opportunity to introduce the only evidence supporting his defense. *Id.* at 505.

In the instant case, Defendant was not denied an opportunity to establish his defense because of an unforeseen emergency. Defendant's case went to trial about two years and three months after the charge at issue was filed against him. The trial court had already granted one continuance to allow Defendant additional time to further investigate Stepfather's potential involvement in the crime.

The child molestation allegation against Stepfather occurred approximately three months prior to Defendant's trial. Defendant's request for continuance did not indicate why he had not had ample time to investigate Stepfather during that time pe-

riod. "Inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare." *State v. Middleton*, 995 S.W.2d 443, 465 (Mo. banc 1999). Under the circumstances present in the instant case, we find the trial court did not abuse its discretion in denying Defendant's second request for a continuance.

Defendant has also failed to demonstrate how he was prejudiced by the trial court's denial of his second request for continuance. Defendant has not identified the particular information he was looking for or even that he had not actually obtained it. Defendant also acknowledges the defense he wished to investigate further was a mere "possibility."

▉ In any event, the information Defendant was looking for—that Stepfather had a propensity to commit acts similar to those alleged in this case—would not have been admissible at Defendant's trial. "To be admissible, evidence that another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime." *Lloyd*, 205 S.W.3d at 902. "The evidence must be of the kind that directly connects the other person with the *corpus delicti* and tends clearly to point to someone other than the accused as the guilty person." *Id.* (emphasis added). "Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." [2] *Id.*

To be admissible, any evidence Defendant might have discovered would have to have directly connected Stepfather to the molestation of Victim; evidence tending to show that Stepfather had been accused of molesting another victim at another time would not constitute such evidence. [3] The only fact Defendant alleges directly connected Stepfather to the crime was Defendant's mother's testimony that Stepfather was in the living room immediately after Victim cried out for help. While Victim did not affirmatively state that Stepfather was *not* in the living room, she did testify that Defendant was the person she saw at that moment. Further, the detective who questioned Defendant testified that Defendant told him that he (Defendant) was in the living room when Victim cried out. Defendant's mother's testimony was that Defendant was in his room asleep at the time and that it was Stepfather who was in the living room when Victim cried out. Though it was up to the jury to decide whose testimony to believe, Defendant's mother's testimony demonstrates that Defendant had the ability to investigate Stepfather as a potential perpetrator of the crime at the time Defendant was initially charged with the offense.

Because Defendant had ample time to investigate Stepfather, and because any

---

2. In this case, there is no evidence that Stepfather had ever been convicted of child molestation, and the charge against him that Defendant was seeking to further investigate had been dismissed prior to Defendant's trial.

3. The trial court recognized this problem when it granted the State's motion in limine seeking to exclude any evidence relating to similar allegations against Stepfather. The trial court stated it was "reluctant to allow [Defendant] to start talking about allegations of other people in other cases as being relevant in this case." In response, Defendant's counsel responded: "Okay. So I'll avoid that issue." Defendant did not seek to admit any such evidence at trial and presented no offer of proof as to what that evidence would have been.

evidence showing Stepfather had a propensity to commit this particular type of offense would not have been admissible at Defendant's trial, the trial court did not abuse its discretion by refusing to grant Defendant's additional motion for continuance. The judgment is affirmed.

LYNCH, C.J. and PARRISH, J. Concur.